Sheriff of the City of New York. Last case on for argument is Pollack v. Ray v. Office of the Sheriff of the City of New Give us a minute Mr. Ripa, you'll get there, hold on just a sec, we'll let Ray get there. Ready your honor? Okay. Thank you. Good afternoon your honors, I'm Glenn Ripa and I represent the plaintiff appellants in this case who were tenants of a residential apartment who were evicted and our argument is that their civil rights were violated under the fourth and fifth amendment of the United of how they were evicted and whether or not they had their lawful rights were followed concerning their eviction under New York City law. The law is very, very clear. New York City civil court had a directive issued on January 20, 2000 which basically said when a court issues a stay of eviction after the service of a notice of eviction and the stay is expired or vacated, a new five day notice of eviction must be served. In this case that's exactly what happened. There was an eviction, an order of eviction, there was a notice, a five day notice of eviction that was served. We went to the appellate division and they stayed the eviction and then their stay was and the city marshal came in and evicted the tenants without the proper five day notice according to not only the city of New York directive of the civil court, there's also it's codified in the marshal's handbook, chapter four, section five dash four. Back up and interrupt you there. You're referring to a directive of the city court and something in the marshal's handbook. Yes. Are those things cited in your brief? No, I don't believe they are, Your Honor. Okay. So putting aside that they're not in your brief and whether that waives anything, where do we find things like this and what authority do they have? I actually have something that I can hand to the court that I have that's . . . Well, I don't need to . . . It actually lays out the sections of the law, Your Honor. Oh. The appellate division considered the failure to issue a new notice of eviction, right? Yes, absolutely. Basically, I think . . . You didn't get process within the state court system on this question as to whether you should have had a second notice of eviction. Well, I don't think that's the issue. I think the issue before the district court was does that elevate to a level of violation of civil rights? I don't necessarily know if the dispute here with respect to the district court is whether or not there is such a law. In fact, the marshals, the marshals, the sheriff's supervisor in our papers told me that the — he violated the rules when he didn't issue the second notice, but there was nothing they could do about it after the fact. So I don't think the issue before the district court is whether or not there was a failure to provide this five-day additional notice. The issue is whether or not that elevates up to the level that it violates the civil rights. And our argument is very simple on this, and that is that this is not a mysterious thing. This is not just given a piece of paper when you evict a person. This is a five-day notice that tells the people in five days we're going to come and take you out. These people were aware of the fact that they needed five days' warning before they were going to take you out. They didn't have the five days, and they didn't have their stuff moved out of the apartment, and it caused substantial damage. This is not a, you know, a technical issue. Kennedy. I do want to come back to the technical issue, though, in a sense, because I thought, after reading the briefs, that the issue took this form. There is a rule that is unquestionably a part of New York State law that says there needs to be a five-day notice. A five-day notice is given, was given, in this case, when there was an order of eviction. Then there was a rather brief stay. The stay comes off, and no further five-day notice is given. And as I read the briefs, I thought, oh, there's an open question of state law as to whether a new five-day notice has to happen. But now you're telling me that it's not an open question at all because there are things that are not part of something that the state legislature enacted, but is a rule of the city court. I don't know, I haven't seen it, and I don't know where to find it, and I don't know whether it has the same status, authoritative status, as a legislative enactment. And something in the Marshall's Handbook, which I also don't know whether that has any force of law at all. So I'm just curious about what are those things that you're now relying on, even as to whether, as a matter of New York State law, a new five-day notice was required post-stay? Yes, that's right. Once the stay is lifted, there's a directive from the New York City Civil Court, who administers the evictions. And in fact, I believe there's- When you say a directive from the court, is this like a standing order of a court that binds all the judges? Is this a kind of regulatory action? I mean, we're- What I can do is I can hand up what I have here. It spells it out very clearly. It talks about that there was a Marshall's Handbook that said there had to be a subsequent notice, and then it said the court on- to clarify the requirements, the court on January 20th, 2000, the New York City Civil Court issued the following directive, and it goes into the fact that an additional notice of eviction has to be served after a stay is vacated. Okay. Well, let's take that as a given for now. Right. Does- So what is the constitutional violation here? Yeah, our argument would be twofold. One is that this notice is critical to the tenant's rights in terms of being lawfully evicted. They have the right to notice. It's an important issue, and it's a right that's given to them by the City of New York. It was violated by the Marshall- It was given to them by the City of New York. ...court, the Civil Court. And why is there- Is this a violation of the Fourth Amendment to unreasonably enter the apartment that the one thing we know for sure is that these folks had no right to be there anymore? Now, that- Maybe the officer violated some directive of the city court and should have been held in contempt for it, but why does that give- Why does that make it an unreasonable- Well, it's unreasonable because the tenants relied on the laws established by the New York City Civil Court and were damaged based on relying on that. And when they were doing the eviction, didn't they go into court and do an order show cause and get immediate access to the apartment to get goods that they required? And there was a lot of- They were aware of the eviction and, in fact, got a court to consider whether they should have access to the apartment to retrieve items. Yeah. Well, that's the- That is the second cause of action, and that is that we went back and got a court order that allowed them to go back and secure their necessities from the apartment. And that's the second issue in this case in that we're arguing that the sergeant who came on the scene prevented them from taking their necessities. The court said that the- Why is all of this back in the state court system? Why is what? Well, complaining about what a sergeant did or did not do in compliance with procedures set out and- or ordered by various courts that issued the notice of eviction, why aren't you there? What did the sergeant do by- I mean, he was told, let them in and get certain things. He didn't do it. You go back to court and say, he's not letting me do this. Well, no. That's the problem. The problem is that what happened here is the- the tenants went to- We got a court order that allowed them to go back to the apartment to take their necessities. They went to the precinct. They were escorted to the apartment by police officers. They had a locksmith that came in and allowed them to get into the premises. They went in to take their necessities. Then Lee Chen, the landlord, ran and got somebody that he probably knew from the 32nd precinct a sergeant. He came down with him, and then the sergeant was saying, you got to put this stuff back. You got to put that stuff back. He was not even from the precinct that was in control of this. He came down with Lee Chen, and he unlawfully prevented them from taking necessities. Unlawfully, because you had- your clients had an order from the state court which allowed them to do that. Right. Why aren't you back there saying, you know, put on- Because our argument is that it's a violation- it's two violations. One is that the- the eviction is, in fact, a seizure because- Yeah, we got that. All right. And then the second issue is, according to the Constitution, the- the localities have to follow the right to due process, and there's a federal right to sue for the civil rights violations based on the violation of the state law. Under the order of the state court, who decides what's a necessity? If the order says they can go back and get necessity, it doesn't say you can get all your property. No, it doesn't say that. It says it's a necessity. So what- And also- and isn't there also some handwritten notation about medication? There is- there are notations about a handwritten notation, but I believe the- the district court even acknowledged that it's not just medication. The court order is in there, and it specifically says necessity. It says TB, for example, and they had it already out in the truck when the sergeant arrived. Right. Does the sergeant have the authority to say, wait a minute, that's a television. That's not a necessity. Put that back. The question is, Your Honor, that is an issue for the trier of fact. And this case was dismissed for- But is there even an allegation- Yes, there is, Your Honor. Is there an allegation as to what it is, what precisely are the species of property? As I read it, it was just saying the sergeant showed up and he said, put some things back. Right. And our argument is that the complaint says that the plaintiffs only took out necessities. The sergeant made them take back things that they had taken out. And our argument is, if they only took out necessities and the stuff that they took back in their car, the sergeant said you had to put back-  No, exactly, Your Honor. It was an allegation that what they took are necessities. Right. Well, our argument is that if the complaint says they only took necessities and the sergeant unlawfully made them put back the necessities that they took, that would be sufficient to sustain a motion to dismiss the complaint. The issue that you're addressing, Your Honor, would be an issue that would be determined by the trier of fact at trial. And that's what we're asking for. And we would also like, I mean, even on the face, this is very suspect. You have a sergeant coming down from 135th Street, and we're in the precinct that is in 67th Street. It's just suspect. And it — Can I ask one factual question? It may be irrelevant to this. I was just curious. There is a statement, at least in the city's brief, that this was a sublet. Is this — what is — does Mr. Chen own this apartment, or did he rent it from someone else? I believe his brother owns this apartment, and he was using it at the right from his brother, and then he sublet it to the plaintiff appellants. And just procedurally, and that's all I need assistance with, Mr. Chen was also named as a defendant in the case and received the benefit of the court's decision, but he's not appearing today and filing a brief. Is that correct? Yes, that is correct. And our argument with — He is still an appellee. Yes, he is, Your Honor. And our argument with respect to that is that he aided and abetted these violations, and that's why he's charged. By the way, there is also a pending case in Supreme Court State of New York suing him for unlawful conversion. So there is another action against Lee Chen alone. But not against the city, Your Honor? No, no, no, not at all. Has nothing to do with that. You've reserved a minute for rebuttal. Okay. You're here not representing Mr. Chen, but all the other — That's right, Your Honors. Alina Jerker on behalf of the city. I wanted to raise a jurisdictional issue before we go forward. I apologize. I only noticed during my preparation for oral argument. But actually, the notice of appeal only appeals from part of the order. It appeals from the order granting the defendant the City of New York's motion to dismiss. So under Rule 3, the appellant can define the scope of their appeal. And I believe this might raise an issue as to the claims against the individual officer and the individual sheriff. I have a couple of cases on that, if it would help the Court. Just so I understand, you are acting at this moment in furtherance of your duties as an officer of the Court to call to our attention that there may be an issue of appellate jurisdiction with respect to Mr. Chen, who's not who you represent. You're just advising us of this, right? No, no, no. The city — so with the 1983 litigation, there are claims against the city. I understand that. I understand that. I'm just trying to understand. You are not contending that there is — or are you — that there is a jurisdictional defect with respect to our jurisdiction to hear the appeal of Mr. Pollack or Ms. Pollack or the plaintiff parties as it pertains to the sheriff, the sergeant, and the city? I am. That's exactly what I'm saying, Your Honor. Oh. Because — Because — Because only the city has been named. It says the defendant, the City of New York. It doesn't say the defendants, the City of New York, the sheriff — Oh, I see. — and the individual officer. And those are different claims. Individuals. It's not just Mr. Chen. It's also the individual officer. Mr. Chen is actually properly a part of it because he separately appeals from the judgment and order granting the defendantly Chen's motion to dismiss. Oh, okay. So the defect is as to the individuals. So the claims against them are obviously different. The 1983 litigation, you've got the Monel claims. This notice of appeal appears to only be raising the defendant, City of New York's motion and not from the others. I have a couple of cases on when an appellant decides to narrow the scope of their appeal in their notice of appeal, if that would help the court. There's the Cavaccio case, which is 834 F3rd 128. There's the Best Payphone case, which is 498 F3rd 127. So for that reason, I think it may be appropriate actually to dismiss this appeal as opposed to affirming, although I also believe that you ought to affirm on the merits. But dismiss the appeal as to those two parties. Although that is actually the only two parties for whom there are any arguments on appeal because he doesn't seem to be contesting any Monel claims. I got it. But as for the merits, which I'm happy to address as well, I think there's a couple of things going on. First, I think this Court should affirm as to both the individual officer and the individual sheriff. As to the sheriff, he executed a lawful court order of eviction. The Federal constitutional right with respect to evictions, as the Bridgeforth case shows, it's about — it is a question of whether or not there's a court-ordered eviction. These sort of State procedural issues are not constitutionalized. And so there's not a Section 1983 claim on that basis. Also, the Fifth Amendment claim is a claim about procedural due process or substantive due process. In either event, those claims fail because there's both adequate pre-deprivation relief. Here, there was a massive amount of litigation in State court. There was a holdover proceeding. There was this order to show cause. There was post-deprivation — the order to show cause, I'm sorry, is a post-deprivation remedy because they also were able to go back to court and say, State procedures weren't followed. Please give us immediate access. And with that, I can turn to the individual officer as opposed to the deputy to the sheriff, which is the order to show cause. And that order to show cause, I submit, is actually being misread a little bit, which is, if you look, it's in the record on page A78. There's a notation on the cover. So the way it works with an order to show cause, he's — the petitioner comes in and he's typed up this requested relief. And there's a return date set. So this thing, this came in on the 9th of December, as you can see from the top of it. And then the return date is set for the 11th. And that's when they will show cause for why the rest of this order should or should not be given. And in fact, that later was denied. And the only relief that was actually given to the petitioner, the movement at that time, was supervised access 1024 from 12 to 1 p.m. for P — that's plaintiff or petitioner — remove meds. And that was the only thing he was permitted to remove. And based on that, the officer was — didn't violate his 4th or 5th, which probably should be 14th Amendment rights, with respect to the removal of property on that second day. And in any event, again, there was a lot of post-deprivation process with that as well, because they — we returned the following day to state court based on this same thing. And the court was pretty disappointed in the process and said that these petitioners had finally been ousted after considerable landlord-appellate — this application makes a mockery of the action because, among other things — oh, and in the court later notes, they had six hours of unsupervised time to remove items from the property. So I think that this court should affirm both on the merits, because as to neither of the two individual officers, has there been a federal constitutional claim stated, because this directive and this marshal's code, none of this is in the complaint. But even putting it aside, there's not a federal action here. The officer's conduct was reasonable. So we ask this Court to affirm, unless you have any questions. Thank you, Ms. Stroker. Thank you. Mr. Ripa, you have one minute. Yes. I'll be brief. I think the issue with respect to the notice of appeal, I think, is a matter of semantics. I think if you read the substance of what's being said, we're appealing the decisions of — I understand that. I'm sorry? We're all in the business of semantics. I understand, but when we're using the term loosely, the City of New York, and then we're saying, with respect to the dismissals of their cause of action, we know who the parties are. It's not just the City of New York. It's the motion by the city sheriffs and the New York City Police Department. So I think if you read the notice of appeal and look at it in totality, you'll see that we're appealing — The notice of appeal says that you're appealing to the Second Circuit from an order granting — I see, the defendant, City of New York's motion. Were there separate motions made by the city and by the — No, there was just one motion. One motion to dismiss as to everyone. What I'm saying is, if you look at that and then you look at the decision, you'll see that that applies. Again, go back to the order that was allowed them to be — go in and take back their necessities. It does not just say medication. It's very clear. It says necessities. But what says necessities? In other words, what Ms. Drucker is saying is that the order that is signed by the judge is the order to show cause. And that's an order that says — Oh, I see. But there's also language. It is further ordered that the respondent, Lawrence Ray, be allowed to immediately return to the premises accompanied by the police and enter the premise to secure property he needs immediately, including but not limited to prescription medication. Exactly. And that order is signed by the judge. Whatever else is there, it's not just an order to show up and litigate this. That's what the language of the order is. Right. So we're saying that it is necessities. But even more importantly — But then what is — What is that handwritten notation that says supervised access on a particular date for a particular hour? Are you suggesting that the order allows the respondents to be there on other days, that they can just go whenever they want? No, no, no. So that's there. But then — So if that limits the order, that it's not just they can go and remove things, they get supervised access for a particular hour, why isn't the rest of that notation, which says for plaintiff to remove meds — Not very legible, but I think that's what — I'm not sure where you're reading from, Your Honor. I'm looking at page A78 of the appendix, which is the handwritten notation on the order to show cause. Now, it's interesting. It doesn't — Except for the initials of the judge on a stamp next to it, it's not very clear who signed this. But the — I think everyone sort of agreed that this was entered by the judge anyway, and that, as you just said, all the — your clients were entitled to do was to be there on that particular day for that particular hour. And if that's so, why isn't it also so that they are only allowed to remove meds, assuming that that's what that says? Yeah, I'm not really sure. It says for — For R. It may be R. But the whole order is signed by — the whole order is signed by the court, and even more importantly, when we talk about supervised, it was supervised. Nobody was saying that we wanted unsupervised. We're saying, though, that what was — what was allowed was necessities. Mm-hmm. Okay. Thank you. Thank you both. Thank you. We'll reserve decision in this case. The last case on for — on our calendar is U.S. v. Karraher, which is on submission. I will ask the clerk, please, to adjourn the court. Court is adjourned.